# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| JASON BRYAN HULL, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | Case No. CIV-13-67-D |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,[1] | ) |  |
| Defendant. | ) |  |

## REPORT AND RECOMMENDATION

Plaintiff Jason Bryan Hull appeals the denial of his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. United States District Judge Timothy D. DeGiusti referred this matter to the undersigned magistrate judge for proceedings consistent with 28 U.S.C. § 636(b). Having reviewed the record,[2] including the transcript of the administrative hearing and the decision of the administrative law judge ("ALJ"), as well as the pleadings and briefs of the parties, the undersigned recommends that the decision of the Commissioner be REVERSED and REMANDED.

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner Colvin is substituted for the former Commissioner as the defendant in this suit.

[2] Citations to the administrative record, Doc. No. 11, are as "R. ___," using the pagination assigned by the Social Security Administration ("SSA") in the certified copy of the transcript of the administrative record filed with the Court. Citations to other documents filed with this Court adhere to the pagination assigned by the Court's electronic filing system.

PROCEDURAL HISTORY

Plaintiff protectively filed his application for DIB on November 18, 2010, alleging a disability onset date of October 15, 2007. R. 173. Following preliminary administrative denials of his application, Plaintiff at his request appeared for a hearing before an ALJ on May 23, 2012, in Gulfport, Mississippi. R. 32-97, 138, 145. The ALJ issued an unfavorable decision on June 1, 2012. R. 13-26. The Social Security Administration's Appeals Council denied Plaintiff's request for review. R. 1-5. Thus, the decision of the ALJ is the Commissioner's final decision. *See* 20 C.F.R. § 404.981. Thereafter, Plaintiff commenced this appeal.

THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process to determine whether Plaintiff was disabled and therefore entitled to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009);[3] 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 15, 2007, the alleged disability onset date. R. 18. At step two, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the cervical

---

[3] At the time of filing his application for DIB, Plaintiff purportedly resided in Mississippi; thus, the application was assigned to and decided by an ALJ in that state. R. 173, 16. At the time of filing this appeal, Plaintiff purportedly resided in Shawnee, Oklahoma; thus, he properly commenced the appeal in the United States District Court for the Western District of Oklahoma. *See* Compl., Doc. No. 1, at 1; 42 U.S.C. § 405(g) (requiring plaintiff to file appeal in judicial district of residence). Mississippi falls within the jurisdiction of the United States Court of Appeals for the Fifth Circuit, but this Court is within the jurisdiction of the Tenth Circuit. In their briefs, the parties have assumed that Tenth Circuit precedent governs the issues before the Court. The undersigned adopts this assumption for the purpose of the analysis herein.

spine, depression, and mood disorder. R. 18. At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 19. The ALJ specifically noted that Plaintiff's condition did not meet or equal Listing 1.04 (disorders of the spine, resulting in compromise of a nerve root or the spinal cord) or 12.04 (affective disorders).

At step four, the ALJ considered Plaintiff's residual functional capacity ("RFC"), finding that Plaintiff can

> perform sedentary work . . . with the following additional limitations: must be able to stand and/or move around after every thirty minutes of sitting, must not stand and/or walk for more than thirty minutes, may only occasionally balance, stoop, kneel, crouch, crawl, or rotate head side-to-side or up-and-down, must not climb ladders, scaffolds, or ropes, must perform only routine, repetitive tasks in a non-confrontational work environment involving no confrontation with supervisors, low stress, and no work production requirements.

R. 20. The ALJ determined that Plaintiff's RFC would prevent him from returning to his past relevant work as a groundskeeper, salesperson, or aircraft mechanic. R. 24. At step five, the ALJ relied on the testimony of a vocational expert and determined that Plaintiff could perform occupations offering significant numbers of jobs in the national economy, including booth cashier, appointment clerk, and dispatcher. R. 25.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th

Cir. 2009); *see also Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (describing "substantial evidence" as "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion" (internal quotation marks omitted)); *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (noting "decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it" (internal quotation marks omitted)). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the ALJ's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ISSUES PRESENTED ON APPEAL

Plaintiff raises three claims of error on appeal. First, Plaintiff contends the ALJ erred in evaluating the medical opinion evidence. *See* Pl.'s Br., Doc. No. 19, at 18-23. Plaintiff next contends that the ALJ's assessment of Plaintiff's RFC was not based on substantial evidence. *Id.* at 23-25. Finally, Plaintiff contends that the ALJ failed to properly evaluate Plaintiff's credibility. *Id.* at 25-26.

ANALYSIS

A. **The Standards for Proper Consideration of Medical Opinion Evidence**

SSA regulations distinguish among various types of "acceptable medical sources." *See* 20 C.F.R. §§ 404.1502, .1513(a). Generally, the highest weight is given to the opinion of a "treating source," which includes a physician or psychologist who has "provided [the claimant] with medical treatment or evaluation" during a current or past "ongoing treatment relationship" with the claimant. *See id.* §§ 404.1502, .1527(c)(2). The opinion of a "nontreating source" – which includes a physician or psychologist who has examined the claimant but does not have a current or past "ongoing treatment relationship" with the claimant – must be considered but generally is not given as much weight as that of a treating source. *See id.* §§ 404.1502, .1527. "Regardless of its source, [the ALJ] will evaluate every medical opinion" received into the record by the SSA. *Id.* § 404.1527(c).

When considering the opinion of a claimant's treating physician, the ALJ must first determine whether the opinion should be assigned "controlling weight" on the matter to which it relates. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. § 404.1527(a)(2), (c)(2). The opinion of a treating physician is generally entitled to controlling weight if it is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) not inconsistent with other substantial evidence in the record. *Watkins*, 350 F.3d at 1300 (applying SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)); 20 C.F.R. § 404.1527(c)(2).

If a treating physician's medical opinion is not entitled to controlling weight, the following factors must be considered in determining the amount of lesser weight to assign:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1300-01; *see also* 20 C.F.R. § 404.1527(c)(2)-(6). Although an explicit discussion of each factor is not required, the record must reflect the ALJ's consideration of each factor. *Andersen v. Astrue*, 319 F. App'x 712, 722-23 (10th Cir. 2009) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)). "[T]he ALJ must give good reasons in [the] notice of determination or decision for the weight he [or she] ultimately assigns the opinion." *Watkins*, 350 F.3d at 1301 (first alteration in original) (internal quotation marks omitted). In any event, the ALJ's decision "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

As with treating sources, the ALJ is required to evaluate medical opinion evidence from a nontreating source. *See* 20 C.F.R. § 404.1527(b), (c); SSR 96-5p, 1996 WL 374183 (July 2, 1996). In so doing, the ALJ should consider the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6). If the ALJ rejects a treating or nontreating source's medical

opinion entirely, the ALJ must provide "specific, legitimate reasons" for such rejection. *Watkins*, 350 F.3d at 1301; *Doyal*, 331 F.3d at 764.

B.      **The ALJ's Consideration of Dr. Matherne's Opinion**

In assessing Plaintiff's RFC, the ALJ assigned "great weight" to the opinion of a consultative examiner, Dr. J. Donald Matherne, who examined Plaintiff in July 2008. R. 22. Citing Dr. Matherne's opinion at length, the ALJ quoted, with emphasis, Dr. Matherne's statements that Plaintiff – as a result of "problems with concentration" – "**appears to be moderately impaired in his ability to perform routine, repetitive tasks at this time**" and "**is moderately impaired in his ability to interact with co-workers and supervisors**." R. 22; *see also* R. 332.

The ALJ determined that Plaintiff had the RFC to perform no more than sedentary work, with the additional limitation that Plaintiff "must perform *only routine, repetitive tasks* in a non-confrontational work environment involving no confrontation with supervisors, low stress, and no work production requirements." R. 20 (emphasis added). The ALJ's finding that Plaintiff may perform *nothing but* routine, repetitive tasks is at odds with Dr. Matherne's opinion, which was expressly assigned great weight. The ALJ does not provide a specific reason for why he departed from Dr. Matherne on this point or explain how the medical evidence supports his conclusion. Upon remand, the ALJ should reconsider Plaintiff's RFC in light of the entirety of the medical opinion evidence and, if he disagrees with a qualifying nontreating source opinion, such as that of Dr. Matherne, "provide specific, legitimate reasons for rejecting it." *See Doyal*, 331 F.3d at 764.

7

### C. The ALJ's Consideration of Dr. Ruffin's Opinion

On August 7, 2008, Dr. Glenn Ruffin completed a form from the Mississippi Office of Disability Determination Services ("DDS"), providing "functional information" regarding Plaintiff's condition. R. 357-59. On August 12, 2008, Dr. Ruffin completed the same DDS Form. R. 354-56.[4] Although the printed forms were identical, Dr. Ruffin's responses were not.[5] On the August 12, 2008 DDS Form, Dr. Ruffin marked several categories of Plaintiff's functioning as "fair" that on the August 7, 2008 DDS Form he had marked as "poor." *Compare* R. 355, *with* R. 358.

Without expressly recognizing the fact that there were two separate forms in the record, the ALJ assigns different weights to different portions of the two forms. First, the ALJ states:

> [Dr. Ruffin], a treating psychiatrist[,] opined in August 2008 that the claimant had a fair ability to demonstrate[] reliability, relate predictabl[y] in

---

[4] The record reflects that Plaintiff was treated by Dr. Ruffin on two occasions prior to the completion of the two forms—on or about March 19, 2008, and April 21, 2008. *See* R. 364-66, 360. Defendant has urged that Dr. Ruffin was not a treating physician due to Plaintiff's limited number of interactions with Dr. Ruffin prior to completion of the DDS Forms. Def.'s Br., Doc. No. 20, at 5. However, as Defendant concedes, the ALJ characterized Dr. Ruffin as a "treating psychiatrist." *Id.*; R. 23. The ALJ did not address the number of interactions between Plaintiff and Dr. Ruffin or the basis for his reference to Dr. Ruffin as a treating source. *See* R. 16-26. The reasons for an ALJ's decision must be stated therein, not supplied in a post hoc effort to salvage the decision. *Robinson v. Barnhart*, 366 F.3d 1078, 1084-85 (10th Cir. 2004). Thus, the undersigned rejects Defendant's contention that Dr. Ruffin was not a treating physician.

[5] The undersigned found no explanation in the record for either the discrepancies between Dr. Ruffin's responses on the two forms or why two forms were completed. Further, there is no indication in the record that Plaintiff had an appointment or other interaction with Dr. Ruffin during the interim period that could have affected Dr. Ruffin's assessment of Plaintiff. *See* R. 353-66.

8

social situations, and understand, remember and carry out simple or detailed job instructions. Exhibit 9F. Dr. Ruffin also stated that he has trouble maintaining concentration and memory and he had difficulty relating to others when withdrawn from depression. However, his treatment was helping to improve these symptoms.

R. 23. The above-cited opinion appears on Dr. Ruffin's August 12, 2008 DDS Form. R. 355-56. Although the ALJ does not explicitly state it, the ALJ appears to have assigned this portion of Dr. Ruffin's later opinion great or controlling weight.[6]

Second, the ALJ assigns "little weight" to other portions of *both* the August 7, 2008 DDS Form and the August 12, 2008 DDS Form:

> Dr. Ruffin opined that the claimant had a poor ability to deal with the public, handle work stress, interact with supervisors, and maintain his concentration and/or attention. Exhibit 9F/6. He also stated that [t]he claimant is [too] disabled to work at all. Exhibit 9F/3. This portion of his opinions receives little weight due to the reasons discussed below.

R. 23. The information cited from "Exhibit 9F/6" refers to a section of the August 7, 2008 DDS Form—a section not completed on the August 12, 2008 DDS Form. *Compare* R. 358, *with* R. 355. The information cited from "Exhibit 9F/3" refers to a statement by Dr. Ruffin on the August 12, 2008 DDS Form. R. 355.

Consistent with the discussion above, for the portions of Dr. Ruffin's opinion that the ALJ assigned little weight, the ALJ should have considered – and explained –

---

[6] The ALJ appears to have relied on the portions of Dr. Ruffin's opinion that comport with the ALJ's assessment of Plaintiff's RFC. In addressing Plaintiff's allegations of depression, the ALJ states that "the objective evidence does not show that [Plaintiff's] mental problems prevent him from working under the [RFC as assessed by the ALJ]." R. 22. Further, the ALJ stated that "[m]ental health professionals [have] treated [Plaintiff] for mood disorder secondary to his medical condition." *Id.* As support for these statements, the ALJ cited several exhibits containing the opinions of medical sources, including that of Dr. Ruffin. *Id.* (citing Exhibits 2F, 3F, 4F, 9F (Ruffin), 21F).

9

whether the selected opinions were well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with the other substantial evidence in the record. Then, upon assigning less than controlling weight to portions of Dr. Ruffin's opinion, the ALJ should have considered the six factors set forth in 20 C.F.R. § 404.1527(c) in determining the specific lesser weight to assign. *See Watkins*, 350 F.3d at 1300-01.

The ALJ's written decision is inadequate to show full consideration of the required factors. The ALJ states that some portions of Dr. Ruffin's opinion are "not supported by the objective evidence of treatment notes and contradict other opinions," but the ALJ cites no evidence to support those conclusions. R. 23. The only other explanation provided by the ALJ for giving little weight to portions of Dr. Ruffin's opinion is the following:

> Dr. Ruffin's opinions are . . . conflicting. He also stated that the claimant had a fair ability to demonstrate[] reliability, relate predictabl[y] in social situations, and understand, remember and carry out simple or detailed job instructions, which supports his ability to work. Exhibit 9F. In addition, the claimant's medications appear to affect his mood. His "hallucinations" stopped when he stopped using the pain patch. His doctor stated that narcotic medication was likely causing depression.

R. 24.

The medical records show that Plaintiff used and then ceased using a Fentanyl patch. R. 455. Plaintiff reported to the neurologist who prescribed Fentanyl that he experienced daily headaches after ceasing to use the medication. R. 455-56. Plaintiff also testified at the hearing that he experienced "some bad side effects" during the process of ceasing to use Fentanyl. R. 65. The ALJ, however, does not cite evidence to

10

connect Plaintiff's use of Fentanyl to hallucinations, or more importantly to connect Plaintiff's use of Fentanyl (or lack thereof) to the remainder of Plaintiff's mental condition (or improvement thereon).

Similarly, the ALJ's "narcotic medication" reference overstates the evidence. In his decision, the ALJ previously made a similar point—i.e., that Plaintiff's "doctor also stated that his narcotic medication likely contributed to his depression." R. 22 (citing "Exhibit 21F"). The ALJ does not explain the increase from "contributing to" to "causing" depression. *Compare* R. 22, *with* R. 24; *see also* R. 459-88 (Exhibit 21F); Def.'s Br. at 7 n.6, 13 (contending ALJ intended to cite R. 464). The exhibit referenced by the ALJ includes two treatment notes reflecting concern regarding pain medication and its effect on Plaintiff's mental status. *See* R. 464 (noting "[d]iscussed contribution of opiates to worsening depression – plan on trial of Suboxone"), R. 468 (noting "defer pain mgmt. meds to Dr. Voulters – may be causing 2° apathy & ↓ cognition"). However, neither of the two notes supports a conclusion that Plaintiff's mood disorder was caused by medication. Even if that were the case, functional limitations caused by medicinal side effects must be considered in determining a claimant's RFC, *see* 20 C.F.R. § 404.1529(c)(3)(iv), and thus also should be considered in evaluating a treating physician's opinion.

What one is left with is the reasonable implication that Dr. Ruffin's opinion is internally inconsistent—but no explanation as to why the ALJ found the portions of the opinion reflecting *lower* limitations to be correct but the portions reflecting *higher* limitations to be incorrect. The ALJ at most considered two of the six factors from 20

C.F.R. § 404.1527(c), but even in this discussion he does not articulate reasons supporting his analysis; instead, the decision contains only the conclusory statements that portions of Dr. Ruffin's opinion are "not supported" by relevant evidence and "contradict other opinions." *See* R. 23.

Although conflicting information between the two forms could warrant the assignment of less weight to Dr. Ruffin's opinions or portions thereof, the ALJ does not adequately explain the reasons for assigning "little weight" only to select information from the two forms. Thus, the ALJ's decision is not sufficiently specific to make clear to subsequent reviewers, such as the undersigned, the reasons for assigning this weight. *See Watkins*, 350 F.3d at 1300. Upon remand, the Commissioner, consistently with the treating physician rule and 20 C.F.R. § 404.1527(c), should properly evaluate and explain the evaluation of Dr. Ruffin's opinion.[7]

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge recommends that the decision of the Commissioner be reversed and remanded for further proceedings consistent with this Report and Recommendation.

---

[7] Because the undersigned recommends that this matter be reversed and remanded based on the ALJ's failure to properly consider the opinion of a treating physician, Plaintiff's additional claims of error are not specifically addressed herein. Nevertheless, on remand, the ALJ should use care in avoiding errors claimed by Plaintiff, including those related to assessing Plaintiff's credibility.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by March 28, 2014. The parties further are advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 14th day of March, 2014.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE